664 A.2d 532

**Madeline M. NIEVES, Appellee,**

v.

**Marcia J. AKRESH and Marshall K. Miles.**

**Appeal of Marcia J. AKRESH.**

Supreme Court of Pennsylvania.

Argued Dec. 5, 1994.

Decided Aug. 28, 1995.

Reargument Denied Oct. 18, 1995.

490

Kenneth F. Demarco, Barbara S. Magen, Philadelphia, for M.J. Akresh.

Peter J. Neeson, William J. McKee, Philadelphia, for M.M. Nieves.

Gordon J. Scopinich, Philadelphia, for M.K. Miles.

Before NIX, C.J., and FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY, CASTILLE and MONTEMURO, JJ.

## OPINION IN SUPPORT OF AFFIRMANCE

MONTEMURO, Justice.

Since I do not believe that an adjudication of work relatedness took place in this matter, I would affirm the decision of the Superior Court.

Preceding its primary conclusion that the Superior Court erred, the Opinion in Support of Reversal makes several assumptions to which I also take exception. The first of these states that because the Act only contemplates payment to those who have suffered a work related injury, appellee must have suffered such an injury or the Board could not properly have granted her Petition for Commutation. This reasoning is fallacious.

■ Here there was never a claim for benefits. Rather, due to the severity of appellee's injuries, the insurance company for the employer filed a notice of compensation payable, and proceeded to provide benefits while appellee was too disabled to work. The Board commuted these (unsought) benefits to a lump sum because appellee perceived this to be in her interests, noting at the same time that, by agreement, the money would be repayable were it recovered in a common law tort suit. *Kohler v. McCrory Stores* clearly accepts the regularity of such an arrangement, observing that "There is a significant difference between the situation where an employee requests and is awarded benefits by a referee and where he simply accepts benefits through Notice of Compensation Payable *and/or agreement.*" Moreover, "*Any* benefits received in the absence of, or prior to, a final adjudication of compensability can simply be repaid out of damages repaid through the negligence action." *Id.* 532 Pa. 130 at 139, 615 A.2d 27 at 32.

(emphasis added) There is thus no automatic designation of an injury as work related because benefits have, temporarily, been received in some form.

■ In support of its conclusion that an adjudication has occurred, the Opinion in Support of Reversal advances the notion that the term "work injury," which appears in the Stipulation of Facts in support of appellee's Petition to Commute, is an admission that the accident was work related. However, the same Stipulation elsewhere states that appellee's injuries were incurred "allegedly within the course and scope of her employment." (Stipulation of Facts at para. 1) There is therefore nothing determinative about the term "work" which is contradicted within the same document. Even assuming that such equivocal language constitutes an admission, still no adjudication has occurred.

The Opinion in Support of Reversal seems to find controlling the fact that the defendant in any tort action brought by appellee would be a fellow employee rather than the employer, and *Kohler*, in approving the repayment arrangement, does so only in the context of its own facts, that is, where the potentially liable party is the employer. The Opinion in Support of Reversal deduces that because the employer is not attempting to limit its own liability here, the injury must be work related. The logic of this conclusion is less than compelling. The thrust of the holding in *Kohler* is not merely to legitimize repayment agreements only where an employer may be found liable as a tortfeasor, but to assure that injured employees are not exploited. That it is not the employer but a fellow employee who seeks to capitalize on the situation here does not alter the principle of fairness *Kohler* enunciates.

■ Most problematic is the equation of these pieces of information, that is the commutation of benefits, the use of "work injury," and the employer's failure to contest commutation with a final adjudication, ignoring the *Kohler* requirement that there be a specific finding by a referee that a work related injury has occurred. In this instance both the circumstances of the accident, and the administrative actions that

followed militate against such a findings being rationally made. To decide on the basis of nondeterminative occurrences that what injured appellee was work related is at odds with both the statute and any definition of adjudication.

BLACK'S LAW DICTIONARY 39 (5th ed. 1979) defines adjudication as

> The *formal* giving or pronouncing a judgment or decree in a cause; also the judgment given. The entry of a decree by a court in respect to the parties in a case. It implies a hearing by a court, after notice, of legal evidence on the factual issue(s) involved. The equivalent of a "determination." And contemplates that the claims of all the parties thereto have been considered and set at rest. (emphasis added; citations omitted)

No such formal proceeding was sought or occurred here. The Board merely acquiesced to the payment, in a different form, of funds that the insurance company had unilaterally decided to award to appellee after the accident, and which the same insurance company agreed to pay out in a lump sum with the understanding that appellee would return these funds out of any award received in a tort action. As *Kohler* points, out, this is an acceptable arrangement which does no violence to the statute. Necessarily involved in the tort action would be a determination of whether the accident was work related. If it were found to be within the course and scope of appellee's employment, no refund need be made. The tort action here resulted in a determination that the injury was not work related, a result consistent with law and reality which should not be disturbed.

Accordingly, since the conclusion drawn by the Opinion in Support of Reversal that an adjudication has occurred comports neither with the specific finding requirement of *Kohler*, nor the definition of adjudication, I would affirm.

PAPADAKOS, J., did not participate in the decision of this case.

494

CAPPY and CASTILLE, JJ., join in this opinion in support of affirmance.

NIX, C.J., files an opinion in support of reversal in which FLAHERTY and ZAPPALA, JJ., join.

MONTEMURO, J., is sitting by designation.

## ORDER

PER CURIAM.

The Court being evenly divided, the Order of the Superior Court is affirmed.

NIX, Chief Justice, opinion in support of reversal.

Appellant, Marcia Akresh, appeals from the Order of the Superior Court which affirmed the Order of the court of common pleas. Appellee, Madeline Nieves, instituted a civil action in the court of common pleas for injuries she sustained in an automobile accident while she was the passenger in a car being driven by Appellant. Prior to the commencement of trial, Appellant sought summary judgment on the ground that Appellant and Appellee were in the course of their employment at the time of the accident; however, the trial court denied this motion. Following a jury trial, Appellee was awarded $767,000.00 for past and future medical benefits, past earning capacity, future lost earning capacity, and past and future pain and suffering. The jury attributed 75% of the liability to Appellant. Appellant filed post-trial motions which were denied. She then appealed to the Superior Court which affirmed the Order of the trial court. *Nieves v. Akresh,* 430 Pa.Super. 658, 630 A.2d 470 (1993).

Appellant filed a timely appeal to this Court which was granted. Allocatur was limited to the following issues: 1) whether the Superior Court erred in holding that Appellee was not estopped from pursuing the present tort action by reason of her Petition for Commutation of Workers' Compensation Benefits, and 2) whether the Superior Court erred in holding that Appellee's injuries occurred outside the scope of

her employment. For the reasons that follow, I would reverse the Order of the Superior Court.

Appellant and Appellee were co-workers at the Bradford School in Philadelphia. On September 26, 1986, the school was closed so that all employees could attend a mandatory seminar at the Valley Forge Sheraton in Valley Forge. Transportation to and from the seminar was the responsibility of each employee. Appellant arranged to drive Appellee and another co-worker to and from the seminar in Appellant's car. The three attended the morning seminar but were permitted to leave along with other faculty members at its completion because the afternoon seminar did not relate to their positions at the school.

Appellant, Appellee and their co-worker left the seminar, and on their way home they decided to stop for lunch at the King of Prussia Mall. While making a left turn from North Gulph Road, Appellant's car was struck by a car being driven by Marshall Miles causing serious personal injury to Appellee.

Aetna Life and Casualty Company ("Aetna"), the workers' compensation insurance carrier for the Bradford School, issued a Notice of Compensation Payable, dated October 20, 1988, and began issuing workers' compensation benefits to Appellee pursuant to the Workers' Compensation Act, Act of June 4, 1937 P.L. 1552 §§ *et seq.* (codified as amended at 77 P.S. §§ 1–1603) ("the Act"). A Supplemental Agreement for Compensation was entered into by Aetna and Appellee on September 1, 1988. This agreement reduced Appellee's disability rate based on her ability to return to light-duty work. Appellee filed a Petition for Commutation of Benefits with the Workers' Compensation Appeal Board ("the Board"), and Aetna filed an Answer to Petition for Commutation consenting to the commutation. Aetna and Appellee entered into a Stipulation of Facts with regard to the Petition for Commutation. The Board granted the commutation based on its review of the Petition, the Stipulation, all of the supporting documentation and on the consent of Appellee. *Nieves v. Franklin–Morris Education Group,* No. C–30910 (Workers' Compensation Appeal Bd. Apr. 13, 1989).

Appellee later brought the tort action which is the subject of this appeal against Appellant and Miles.[1] She agreed to refund to Aetna eighty percent of what she had received in workers' compensation benefits from any award won in her civil action. Prior to trial, Appellant sought summary judgment, arguing that she was immune from liability because the accident and Appellee's injuries occurred during the course of their employment. Therefore, Appellant asserted, Appellee's sole remedy was against their employer under the Act. A hearing was conducted, and the trial court held that there was no evidence to determine that Appellee was in the course of her employment when the accident occurred. *Nieves v. Akresh*, No. 6046, March Term 1987, slip op. at 4 (C.P. Philadelphia County May 10, 1991). The Superior Court held that the trial court had not erred when it determined that Appellee's injuries did not occur in the course of her employment. *Nieves v. Akresh*, 430 Pa.Super. 658, 630 A.2d 470 (Pa.Super.1993). This holding was based on the Superior Court's finding that Appellee was a stationary employee, and therefore, was not in the course of her employment during her commute home from the seminar. *Id.* at 13. Appellant's Petition for Allowance of Appeal before this Court was granted, limited to the issues of whether the Superior Court erred in holding that Appellee was not estopped from pursuing a tort action against Appellant and whether the Superior Court erred in holding that Appellee's injuries had occurred outside the course of her employment.

I will first address the issue of whether Appellee was estopped from pursuing this tort action after she had filed a Petition for Commutation of Benefits under the Act.

Appellant cites this Court's decision in *Kohler v. McCrory Stores*, 532 Pa. 130, 615 A.2d 27 (1992), for the proposition that an employee is precluded from instituting a liability suit against a co-employee where there has been a final adjudica-

---

1. Appellee entered into a joint tortfeasor release and settlement agreement with Miles, releasing him from further liability. Based on this release, Miles did not participate in the trial, and therefore, is not a party to this appeal.

tion of the employee's entitlement to workers' compensation benefits. According to Appellant, there was a final adjudication of Appellee's right to workers' compensation benefits when the Board granted her Petition for Commutation. As such, Appellant asserts that Appellee is estopped from now asserting that the injuries she sustained were not the result of a work-related accident.

Appellee also cites *Kohler*, but for the position that she is not estopped from pursuing a liability action. According to Appellee, *Kohler* allows her to accept unilateral workers' compensation payments without giving up her right to bring a tort action for the injuries for which she received such payments. Appellee asserts that there was no final adjudication as to her entitlement to workers' compensation benefits, and therefore, she is not barred from maintaining a tort action.

Although *Kohler* is not directly on point with the instant matter, a review of *Kohler* is instructive in determining the outcome of the issue at hand. In that case, the employee, Kohler, was operating a motorized double pallet jack when he was struck from behind and injured by a co-worker operating a similar jack. The employer's workers' compensation insurance carrier issued a Notice of Compensation Payable and paid benefits to Kohler. The parties later entered into a Supplemental Agreement, and Kohler's benefits were eventually terminated by order of a referee based on the employer's Petition for Termination, Modification or Suspension of Compensation. Shortly after his benefits were terminated, Kohler filed a complaint in trespass against his employer. He alleged that his injuries resulted from the employer's negligence in failing to provide a safe workplace for him when the employer knew of the personal animosity between Kohler and the co-worker involved in the accident.

In *Kohler*, this Court held that "only a final adjudication of work-relatedness can estop an employee from asserting that his injuries are not work-related for purposes of maintaining an action against his employer under the personal animus exception to the Act." *Id.* at 134, 615 A.2d at 29. In adjudicating the Petition for Termination, Suspension or Modi-

fication of Compensation filed by the employer, the referee found that Kohler's injury was work-related. Kohler did not appeal this finding. Because Kohler's injury could not have been both work-related and caused by his co-worker's animosity and because the referee determined that the injury was in fact work-related, this Court found that the question of compensability had been adjudicated. *Id.* at 140, 615 A.2d at 32. Therefore, this Court held that Kohler was estopped from asserting that his injuries were not work-related and that his sole remedy was under the Act. *Id.* at 141, 615 A.2d at 33.

In light of our holding in *Kohler* that there must be a final adjudication before an employee can be estopped from asserting that his injuries did not arise in the course of employment, the question before us then becomes whether Appellee's Petition for Commutation of Benefits along with the Board's grant [2] of that petition constitute a final adjudication as to the compensability of Appellee's injuries under the Act.

The Act provides that "compensation contemplated by this article may at any time be commuted by the board...." 77 P.S. § 604 (footnote omitted). The "compensation contemplated" is the benefits the Act provides for employees who suffer injuries in the course of their employment. Clearly then, the Board could not properly have granted Appellee's Petition for Commutation if she had not suffered a work-related injury. Moreover, Appellee admitted in the Stipulation of Facts which she submitted in support of her petition that she had suffered a work-related injury. (Supplemental Reproduced Record at 5a). Specifically, the parties agreed in the stipulation that "[a]ll reasonable and necessary medical expenses causally related to the September 26, 1986 *work injury* ... will continue to be paid by the Defendant in accordance with the Act." (emphasis added) *Id.*

It is clear that Appellee affirmatively sought the protection of the Act and accepted its provisions. This situation is unlike the situation in *Kohler* where the employer unilaterally made

2. I also note that Appellee did not appeal from the Board's grant of her petition.

payments to the employee.[3] Although Aetna initially made such payments following the accident, Appellee went beyond this when she sought a commutation of the benefits she was receiving. Appellee should not now be permitted to claim that there was no final adjudication after she herself sought such.

Moreover, in the instant matter we are not confronted with the possibility that the employer is attempting to limit its liability by paying benefits to Appellee. In *Kohler*, the employee was seeking to bring a tort action against his employer; here, the employee is seeking to bring a tort action against her co-worker. The employer will not gain any advantage by accepting liability because the employer would not be responsible for the recovery in the tort action as it would have in *Kohler*.[4] Thus, I would hold that the Board's grant of Appellee's Petition for Commutation constitutes a final adjudication that Appellee did suffer a work-related injury.[5]

In light of my position that Appellee did suffer a work-related injury,[6] Appellee should not be allowed to bring a tort

3. In his Opinion in Support of Affirmance, Mr. Justice Montemuro asserts that the repayment agreement entered into by Appellee and Aetna is acceptable under *Kohler* because in this situation the employee is simply accepting benefits unilaterally paid by the employer rather than one where the employee sought an award of benefits. I do not agree, as Appellee actively pursued a commutation. At that point, the benefits were no longer unilaterally paid by the employer but were paid pursuant to the Order of the Board at Appellee's request.

4. The Opinion in Support of Affirmance asserts that in *Kohler* this Court was concerned with preventing the exploitation of an injured employee. Although this is true, my position in the instant matter does not promote such exploitation. Rather, my position would prevent an employee from using the benefits allowed under the Act as a fail-safe mechanism in the event that the employee's tort action is unsuccessful.

5. The Opinion in Support of Affirmance claims that there was no formal proceeding in the instant case such that there could have been a final adjudication. According to the Opinion in Support of Affirmance, the Board's grant of Appellee's petition was mere acquiescence to restructuring the employer's unilateral payments. Clearly, the Board does not merely acquiesce to petitions presented to it, rather, it must follow the provisions of the Act and established case law. When a party goes before the Board, that party is seeking an adjudication of the matter presented.

6. Because I would hold that the Board's grant of Appellee's commutation constituted a final adjudication as to the work-relatedness of her

action against her co-worker. The exclusivity provision of the Act provides that "[i]f disability ... is compensable under this act, a person shall not be liable to anyone at common law or otherwise on account of such disability ... for any act or omission occurring while such person was in the same employ as the person disabled...." 77 P.S. § 72; *see also Ducjai v. Dennis,* 540 Pa. 103, 656 A.2d 102 (1995) (employee not permitted to recover workers' compensation benefits from employer as well as damages at common law from co-employee when employee was injured in an automobile accident during the course and scope of her employment).

I would hold that the Superior Court erred in determining that Appellee was not estopped from pursuing a tort action against Appellant in light of the Board's grant of Appellee's Petition for Commutation. Therefore, the Order of the Superior Court should be reversed.

FLAHERTY and ZAPPALA, JJ., join in this opinion in support of reversal.

<hr>

injury, I need not address the issue of whether she was in the course of her employment when the accident occurred.